UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

3LIONS PUBLISHING, INC.,

    Plaintiff,

v.                        Case No. 8:19-cv-213-T-33TGW

INTERACTIVE MEDIA CORP.
d/b/a KANGURU SOLUTIONS,

    Defendant.

_____/

## ORDER

This matter comes before the Court in consideration of Defendant Interactive Media Corp. d/b/a Kanguru Solutions' Motion to Dismiss the Complaint for Failure to State a Claim, or in the Alternative for Lack of Personal Jurisdiction (Doc. # 11), filed on March 4, 2019. Plaintiff 3Lions Publishing, Inc. responded on March 10, 2019. (Doc. # 13). For the reasons that follow, the Motion is denied.

## I.   **Background**

3Lions Publishing, Inc. (3LP) is a Florida corporation "that provides . . . information, solutions, and guidance to the healthcare industry regarding the implementation of safeguards to comply with the Health Insurance Portability and Accountability Act (HIPAA)." (Doc. # 1 at 1). Interactive

1

Media Corp. (IMC) is a "Massachusetts Corporation that describes itself as 'an industry leader in providing secure hardware encrypted USB solutions, quality portable data storage, fully-integrated secure remote management, duplication equipment to organizations and businesses around the world.'" (Id. at 1-2). The Complaint alleges that IMC "blatantly committed trademark infringement on its website." (Id. at 3).

On August 25, 2017, 3LP received a federal trademark registration from the U.S. Patent and Trademark Office for the phrase "HIPAA Survival Guide" in International Classes 9, 35, and 42. (Doc. # 1-3). That registration lists a "first use" date of August 31, 2009, and "first use in commerce" dates of March 15, 2013, as to Class 35 and March 16, 2016, as to Classes 9 and 42. (Id.).

3LP alleges that IMC infringed on the trademark when IMC used the phrase "HIPAA Survival Guide" within a blog post dated October 31, 2012, on its website "to sell its healthcare compliance products and services" for which "it receives a financial benefit." (Id. at 3). The blog post is entitled "HIPAA Survival Guide" and contains four sentences. (Doc. # 1-2). The first sentence states, "Healthcare Informatics has a link to a HIPAA Survival Guide." (Id.). The remaining three

sentences reference IMC/Kanguru-branded products that may help healthcare companies comply with HIPAA requirements. (Id.).

3LP further alleges that IMC's use of 3LP's trademark on IMC's website "attract[s] larger amounts of internet traffic, often by misleading consumers into believing [IMC] [is] associated, affiliated with, or authorized by 3LP." (Doc. # 1 at 3). Further, 3LP indicates that it "never entered into any agreement with [IMC] that would permit [IMC] to adapt or otherwise use the [trademark]." (Id.). 3LP also alleges that IMC's "acts of trademark infringement were willful and deliberate." (Id. at 4).

3LP initiated this action on January 28, 2019, asserting two claims under the Lanham Act for false designation of origin and trademark infringement. (Doc. # 1). IMC moved to dismiss on March 4, 2019. (Doc. # 11). 3LP has responded (Doc. # 13), and IMC has replied. (Doc. # 26). The Motion is ripe for review.

## II. **Legal Standard**

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250,

1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. See Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). "The scope of review must be limited to the four corners of the complaint" and attached exhibits. St. George v. Pinellas County, 285 F.3d 1334, 1337 (11th Cir. 2002).

Additionally, motions to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) are governed by a two-part analysis. First, the Court determines whether the plaintiff has alleged facts sufficient to subject the defendant to the forum state's long-arm statute. Future Tech. Today, Inc. v. OSF Healthcare Sys., 218 F.3d 1247, 1249 (11th Cir. 2000). Second, the Court evaluates whether sufficient

minimum contacts exist between the defendant and the forum state, such that jurisdiction does not offend "traditional notions of fair play and substantial justice." Id.

The plaintiff has the initial burden to show that the Court has personal jurisdiction over the defendant. Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1268-69 (11th Cir. 2002). The plaintiff must allege "sufficient facts to make out a prima facie case of jurisdiction." Estate of Scutieri v. Chambers, 386 F. App'x 951, 956 (11th Cir. 2010). Conclusory allegations are insufficient. Meier, 288 F.3d at 1269.

Once the plaintiff establishes a prima facie case of jurisdiction, the burden shifts to the defendant to challenge those allegations. Id. If the defendant submits affidavits challenging jurisdiction, the burden then shifts back to the plaintiff to substantiate the allegations in the complaint with evidence supporting jurisdiction. Id. Ultimately, reasonable inferences are drawn in the plaintiff's favor if the evidence conflicts. Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990). However, any doubt about the reach of the Florida long-arm statute and the Court's jurisdiction are resolved in favor of the defendant and against jurisdiction.

<u>Gadea v. Star Cruises, Ltd.</u>, 949 So. 2d 1143, 1150 (Fla. 3d DCA 2007).

## III. <u>Analysis</u>

### A. <u>Personal Jurisdiction</u>

Although IMC first argues that the Court should dismiss 3LP's Complaint for failure to state a claim pursuant to Rule 12(b)(6), the Court's ability to exercise personal jurisdiction over IMC presents a threshold issue. <u>See</u> <u>Madara</u>, 916 F.2d at 1514 n.1 (11th Cir. 1990) (explaining that the district court should have ruled on personal jurisdictional issues before considering a request to dismiss for failure to state a claim). As such, the Court first addresses whether personal jurisdiction over IMC is proper pursuant to Florida's long-arm statute.

#### 1. <u>Florida's Long-Arm Statute</u>

Florida's long-arm statute, Section 48.193(1)(a) states that "a person, whether or not a citizen or resident of this state . . . submits himself . . . to the jurisdiction of the courts of [Florida] for any cause of action arising from any of the following acts: . . . [c]ommitting a tortious act within this state."

3LP's Complaint states that IMC's "tortious acts of trademark infringement all occurred either directly or

indirectly within this jurisdiction, as well as throughout the United States, and/or was specifically targeted at this jurisdiction." (Doc. # 1 at 2). Further, 3LP claims that IMC "knew, or should have known, that its acts of trademark infringement targeted this jurisdiction and/or would have a direct impact on persons or entities located in this jurisdiction where the intellectual property was created, is stored and where the subject matter of this action resides." (Id.).

IMC's Motion asserts that the Court lacks personal jurisdiction over IMC because it does not conduct business in Florida. (Doc. # 11 at 17-19). In support, IMC provides a Declaration from its founder and president, Donald Brown. (Doc. # 11-1). Brown states in the Declaration that IMC does not employ any representatives within Florida, does not solicit business in Florida, does not maintain offices in Florida, does not pay taxes to Florida, does not avail itself of the laws of Florida, and had no reason to foresee it would be sued in Florida. (Doc. # 11-1 at 2). Further, IMC argues that 3LP's assertions that IMC engaged in tortious acts are mere legal conclusions without any factual support and therefore are not entitled to a "presumption of correctness." (Id. at 18).

As a preliminary matter, 3LP's allegations contained within the Complaint are sufficient to meet the initial pleading requirements to establish personal jurisdiction. See Wash. Capital Corp. v. Milandco, Ltd., Inc., 695 So. 2d 838, 841 (Fla. 4th DCA 1997) (explaining a plaintiff satisfies its initial pleading requirements by tracking the language of the long-arm statute without pleading supporting facts or by alleging specific facts that demonstrate that the defendant's actions fit within one or more subsections of the statute). Florida's long-arm statute states in relevant part that a nonresident defendant is subject to personal jurisdiction in Florida for "[c]ommitting a tortious act within this state." Fla. Stat. § 48.193(1)(a)(2). This portion of the statute provides for specific personal jurisdiction "over causes of action arising from or related to the defendant's actions within Florida and concerns a nonresident defendant's contacts with Florida only as those contacts related to the plaintiff's cause of action." Louis Vuitton Malletier, S.A. v. Mosseri, 736 F.3d 1339, 1352 (11th Cir. 2013).

Under the long-arm statute, a nonresident defendant need not have a physical presence in Florida for the Court to assert personal jurisdiction. See Wendt v. Horowitz, 822 So. 2d 1252, 1260 (Fla. 2002). Instead, such a nonresident

defendant need only commit a tortious act that causes injury within Florida. Louis Vuitton Malletier, 736 F.3d at 1353. Trademark infringement is treated as a "tortious act" for purposes of the Florida long-arm statute. See Id.; see also Licciardello v. Lovelady, 544 F.3d 1280, 1283 (11th Cir. 2008). Given that the Complaint alleges IMC committed "tortious acts" within this jurisdiction, 3LP has sufficiently tracked the language of the long-arm statute to meet the initial pleading standards for personal jurisdiction.

Nonetheless, IMC's assertions in its Motion are sufficient to shift the burden back to 3LP to produce evidence in support of jurisdiction. See Meier, 288 F.3d at 1269. 3LP's response to IMC's Motion provides that personal jurisdiction is proper because IMC's website "is accessible within Florida" and "because there were direct sales made to persons in Florida from its website." (Doc # 13 at 10).

3LP also argues that the Complaint's facts cannot be distinguished from the facts of Licciardello. In Licciardello, a nonresident defendant posted a website that was accessible to the public in Florida and that used a resident plaintiff's trademarked name and picture — thereby implying that the plaintiff endorsed the defendant's skill as

a personal manager. 544 F.3d at 1282. The website offered CDs for sale that provided management advice and other career assistance. Id. The Eleventh Circuit, in reversing the district court's dismissal of the case, found that personal jurisdiction existed because trademark infringement on a website causes injury in Florida "by virtue of the website's accessibility in Florida." Id. at 1283.

However, Licciardello pre-dates the Florida Supreme Court's decision in Internet Solutions Corp. v. Marshall, 39 So. 3d 1201, 1203 (Fla. 2010), which held in the context of a defamation claim that a website "must not only be *accessible* in Florida, but also be *accessed* in Florida" to subject a nonresident to Florida's jurisdiction under the long-arm statute. Nevertheless, as explained in Meier, the Court draws all reasonable inferences in 3LP's favor when the evidence concerning jurisdiction conflicts. See Meier, 288 F.3d at 1269 ("Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff.").

3LP's Complaint alleges IMC utilized 3LP's trademarked phrase "HIPAA Survival Guide" within a blog post on its website, thereby committing the intentionally tortious act of

trademark infringement. In support, 3LP attaches a copy of IMC's blog post at https://store.kanguru.com/blogs/archives/ 6818326-hipaa-survival-guide. (Doc. # 1-2). 3LP is a Florida corporation with its principal place of business located within Florida. (Doc. # 1 at 1).

As such, the Court can reasonably infer that the webpage containing the blog post was accessed within Florida by at least one person or entity — 3LP. Further, 3LP argues — and IMC does not dispute — that IMC has made sales, however small or insignificant, through its website to persons or entities located in Florida. (Doc. # 13 at 9). IMC's own founder and president states that "[a] direct sale of IMC's products through its website to persons or entities located in Florida would be insubstantial and isolated." (Doc. # 11-1 at 3). Although IMC downplays the number of sales in Florida, the Court draws the reasonable inference that IMC's website — and the offending blog post in particular — was also accessed within Florida by persons and entities other than 3LP.

Therefore, the Court finds 3LP has met its burden of establishing personal jurisdiction over IMC under Florida's long-arm statute.

## 2.  **Minimum Contacts**

The Court now evaluates whether sufficient minimum contacts exist between IMC and Florida such that jurisdiction does not offend "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 320 (1945). In doing so, the Court considers relevant factors such as the burden on IMC, Florida's interest in adjudicating the dispute, 3LP's interest in obtaining convenient and effective relief, and the judicial system's interest in resolving the dispute. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980).

3LP alleges in its Complaint that IMC committed the intentional tort of trademark infringement. (Doc. # 1 at 4). The Eleventh Circuit has held that intentional torts are acts that create a "substantial connection" with the forum state such that the acts may support the exercise of personal jurisdiction over a nonresident defendant who otherwise has no other contacts with the forum state. See Licciardello, 544 F.3d at 1285. Indeed, this Court has recognized that "a number of courts" have held the minimum contacts requirement is met and a defendant should anticipate being hailed into a court in the relevant jurisdiction "where a defendant's tortious conduct is intentionally and purposefully directed at a

12

resident of the forum." <u>New Lennox Indus. v. Fenton</u>, 510 F. Supp. 2d 893, 904 (M.D. Fla. 2007).

As the Complaint alleges that IMC committed the intentional tort of trademark infringement against 3LP, a Florida resident, the Court finds that the Complaint establishes that sufficient minimum contacts exist between IMC and Florida. <u>See</u> <u>R&R Games, Inc. v. Fundex Games, Ltd.</u>, No. 8:12-cv-01957-T-27TBM, 2013 U.S. Dist. LEXIS 28426, at *12 (M.D. Fla. 2013)("Applying <u>Calder</u>, courts assessing allegations of trademark infringement have consistently found the minimum contacts inquiry satisfied because trademark infringement is an intentional tort directed toward the state in which the plaintiff is domiciled."). 3LP alleges that it was injured by the intentional misconduct of IMC, a non-Florida resident, who expressly aimed its trademark infringement at Florida and throughout the country via the internet. (Doc. # 1 at 2).

Under the Supreme Court's holding in <u>Calder v. Jones</u>, 465 U.S. 783, 790 (1984), 3LP is not required to travel to IMC's residence in Massachusetts to obtain a remedy because "[a]n individual injured in [Florida] need not go to [Massachusetts] to seek redress from persons who, though remaining in [Massachusetts], knowingly cause the injury in

[Florida]." The Court also finds that Florida has a strong interest in affording its residents a forum to obtain relief from intentional misconduct of nonresidents causing injury in Florida. See generally Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 632 (11th Cir. 1996); Allerton v. State Dep't of Ins., 635 So. 2d 36, 40 (Fla. 1st DCA 1994). Therefore, the Court concludes that 3LP has alleged facts sufficient to establish personal jurisdiction over IMC.

### B. **Failure to State a Claim**

Having determined that jurisdiction over IMC is proper, the Court turns to IMC's argument that the Complaint should be dismissed for failure to state a claim under Rule 12(b)(6). The Court considers the false designation of origin and trademark infringement claims separately.

#### 1. **False Designation of Origin Claim**

3LP first alleges that IMC's use of "HIPAA Survival Guide" in IMC's October 31, 2012 blog post "is likely to cause confusion, to cause mistake, or [to] deceive others as to the affiliation, connection, or association of [IMC] with 3LP, or as to the origin, sponsorship, or approval of commercial activities with 3LP." (Doc # 1 at 4). To successfully plead a false designation of origin claim, a complaint must allege that (1) the plaintiff had enforceable trademark rights in

the mark, and (2) the defendant used a mark similar enough to the plaintiff's to create a likelihood of consumer confusion. Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc., 106 F.3d 355, 358 (11th Cir. 1997), modified, 122 F.3d 1379 (11th Cir. 1997).

IMC asserts that 3LP did not have enforceable rights in the trademark as of October 31, 2012, because IMC's usage of "HIPAA Survival Guide" predates 3LP's usage of the same. (Doc # 11 at 10). As shown in the Complaint, IMC's blog post contains a date of October 12, 2012, while 3LP's federal trademark registration was issued on August 15, 2017. The registration indicates that 3LP first used "HIPAA Survival Guide" in commerce on either March 15, 2013, or March 16, 2016. (Id.). Given those dates, IMC states that its use of "HIPAA Survival Guide" in commerce was earlier than 3LP's use in commerce.

3LP contends the dates of first use in commerce listed on the federal trademark registration are inaccurate and the result of a miscommunication between 3LP and its counsel. (Doc. # 13 at 5). Despite the mistake, 3LP claims it obtained enforceable rights in the trademark beginning with its first use of "HIPAA Survival Guide" in 2009. (Id. at 4-5). However, the Supreme Court has held that "[r]ights in a trademark are

determined by the date of the mark's first use in commerce." Hana Fin., Inc. v. Hana Bank, 135 S. Ct. 907, 909 (2015).

While 3LP's assertions in response to Defendant's Motion are beyond the four corners of the Complaint, 3LP does indicate within the Complaint that "for nearly a decade, 3LP has used the Mark continuously in commerce on its website . . . and its store front, located on the Internet at store.hipaasurvivalguide.com." (Doc. #1 at 5). In support, 3LP attached to its Complaint an archived internet screen capture of www.hipaasurvivalguide.com. (Doc # 1-4). The attachment clearly shows that the webpage existed as early as May 1, 2009, thereby supporting 3LP's assertion in the Complaint that it has used "HIPAA Survival Guide" for more than a decade. Accepting as true the factual allegations in the Complaint and construing them in the light most favorable to 3LP, the Court finds that 3LP has pled sufficient facts to show it had enforceable trademark rights in the phrase "HIPAA Survival Guide" prior to the date of IMC's blog post.

As the Complaint contains factual support for 3LP's usage of the trademark in commerce prior to IMC's blog post, the Court turns to the second prong of a false designation of origin claim. Here, IMC used the exact phrase contained within 3LP's federally registered trademark. Therefore, IMC clearly

used marks "similar enough to cause confusion." <u>Lone Star Steakhouse</u>, 106 F.3d at 359. Therefore, the Court denies the Motion as to the false designation of origin claim.

## 2. <u>Trademark Infringement Claim</u>

3LP also alleges that IMC's use of "HIPAA Survival Guide" in IMC's October 31, 2012, blog post "constitutes infringement . . . in violation of 15 U.S.C. §§ 1114 and 1125 of the Lanham Act." (Doc # 1 at 5). To successfully plead a trademark infringement claim, 3LP must allege "(1) that [3LP] possess[es] a valid mark, (2) that [IMC] used the mark, (3) that [IMC's] use of the mark occurred 'in commerce,' (4) that [IMC] used the mark 'in connection with the sale . . . or advertising of any goods,' and (5) that [IMC] used the mark in a manner likely to confuse consumers." <u>N. Am. Med. Corp. v. Axiom Worldwide, Inc.</u>, 522 F.3d 1211, 1218 (11th Cir. 2008).

The Court finds that the Complaint alleges facts sufficient to establish that 3LP possesses a valid trademark. Further, the Complaint establishes that IMC used the trademarked language "HIPAA Survival Guide" in its blog post dated October 31, 2012. (Doc. # 1-2).

Having determined that the Complaint sufficiently alleges facts to support the first two elements, the Court

turns to the use in commerce and use in connection with the sale or advertising of goods requirements. The Lanham Act deems a trademark to be used in commerce on goods when

> (A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and (B) the goods are sold or transported in commerce.

15 U.S.C. § 1127. The Eleventh Circuit has held that "[t]he nature of the Internet indicates that establishing a typical home page on the Internet, for access to all users, would satisfy the Lanham Act's 'in commerce' requirement." Planetary Motion, Inc. v. Techsplosion, Inc., 261 F.3d 1188, 1195 (11th Cir. 2001)(quoting Planned Parenthood Fed'n of Am. v. Bucci, No. 97 Civ. 0629 (KMW), 1997 WL 133313, at *3 (S.D.N.Y. 1997)).

In its Complaint, 3LP asserts that IMC "used the [trademark] in order to sell its healthcare compliance products and services." (Doc. # 1 at 3). Further, 3LP attached to the Complaint a copy of IMC's internet blog post that advertises IMC/Kanguru-branded products allowing companies to comply with HIPAA requirements immediately following the use of the phrase "HIPAA Survival Guide". (Doc. #1-2). Thus, drawing all reasonable inferences in favor of 3LP, the Court

finds that 3LP has plausibly alleged the third and fourth elements of a trademark infringement claim.

Finally, 3LP must plausibly allege that IMC used "HIPAA Survival Guide" in a manner likely to confuse consumers. The Court weighs seven relevant factors to determine whether IMC's alleged use of the trademark is likely to confuse consumers:

> (1) the strength of the plaintiff's mark; (2) the similarity between the plaintiff's mark and the allegedly infringing mark; (3) the similarity between the products and services offered by the plaintiff and defendant; (4) the similarity of the sales methods; (5) the similarity of advertising methods; (6) the defendant's intent, e.g., does the defendant hope to gain competitive advantage by associating his product with the plaintiff's established mark; and (7) actual confusion.

<u>Alliance Metals, Inc. v. Hinely Indus., Inc.</u>, 222 F.3d 895, 907 (11th Cir. 2000). "The most persuasive factor on likely confusion is proof of actual confusion." <u>Conagra, Inc. v. Singleton</u>, 743 F.2d 1508, 1514 (11th Cir. 1984).

IMC contends that the "[C]omplaint makes a very generalized allegation that the alleged unlawful use of the [trademark] 'enables [IMC] to attract larger amounts of internet traffic, often by misleading consumers into believing they are associates, affiliated with or authorized by 3LP.'" (Doc. # 1 at 3). While IMC's argument is well-

taken, the Court must draw all reasonable inferences in favor of 3LP. Here, the Complaint alleges that 3LP has used the trademarked phrase "HIPAA Survival Guide" for nearly a decade. Further, 3LP contends that IMC utilized the exact trademarked phrase in a blog post without crediting 3LP as the owner of such term. While the products and services provided by 3LP and IMC may not be substantially similar, they are similar enough for IMC to have included 3LP's trademarked phrase in advertising IMC's own products related to HIPAA compliance.

The Complaint also states that 3LP has used the trademarked phrase "in commerce on its website . . . and [at] its store front, located on the Internet." (Doc. # 1 at 5). While the Complaint does not identify any actual confusion that has resulted from the alleged trademark infringement, such confusion is plausible given that IMC reproduced the exact phrase to which 3LP had trademark rights.

In short, many of the relevant factors weigh in favor of a likelihood of consumer confusion. Thus, at this early stage of the litigation, the Court finds that 3LP has plausibly alleged the final element of its trademark infringement claim.

### 3. <u>Defendant's Fair Use Affirmative Defense</u>

IMC also asserts in its Motion that its "inclusion of the claimed [trademark] in [the] blog post constitutes a non-infringing, non-trademark, fair use." (Doc. # 11 at 12). Fair use is a statutory affirmative defense. <u>See</u> <u>KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.</u>, 543 U.S. 111, 114 (2004); <u>see</u> <u>also</u> <u>Int'l Stamp Art, Inc. v. U.S. Postal Serv.</u>, 456 F.3d 1270, 1274 (11th Cir. 2006).

The Court only considers a fair use affirmative defense when analyzing a 12(b)(6) motion if "the facts necessary to make the determination are evident on the face of the complaint." <u>Land's End at Sunset Beach Cmty. Ass'n v. Land's End Acquisition Corp.</u>, No. 8:16-cv-828, 2016 U.S. Dist. LEXIS 191616, at *23 (M.D. Fla. Nov. 7, 2016); <u>see</u> <u>also</u> <u>Kelly-Brown v. Winfrey</u>, 717 F.3d 295, 308 (2d Cir. 2013)("Affirmative defenses may be adjudicated at this stage in the litigation, however, where the facts necessary to establish the defense are evident on the face of the complaint."). Thus, although IMC provides analysis in support of its fair use defense within its Motion, the Court only looks to whether the defense is apparent on the face of 3LP's Complaint at this stage of the case.

The fair use defense requires a defendant to prove "that its use is '(1) other than as a mark, (2) in a descriptive sense, and (3) in good faith.'" Int'l Stamp Art, Inc., 456 F.3d at 1274 (quoting EMI Catalogue P'ship v. Hill, Holliday, Connors, & Cosmopulos, Inc., 228 F.3d 56, 64 (2d Cir. 2000)(citing 15 U.S.C § 1115(b)(4))). It is not clear on the face of the Complaint that IMC's usage of "HIPAA Survival Guide" constitutes fair use given that the blog post's title included the same phrase trademarked by 3LP and within the context of IMC promoting its products. Therefore, the Court declines to dismiss the Complaint based on IMC's fair use affirmative defense and denies the Motion. However, IMC may raise its fair use defense again at the summary judgment stage.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant Interactive Media Corp.'s Motion to Dismiss the Complaint for Failure to State a Claim, or in the Alternative for Lack of Personal Jurisdiction (Doc. # 11) is **DENIED.**

(2) Interactive Media Corp.'s Answer to the Complaint is due within 14 days of the date of this Order.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 10th day of June, 2018.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE